3-0-9-1-0-3-2, the state of Evangelos v. Tassaras, v. St. Louis v. Roanoke Creek, which is William A. Michas and Calica Daniel F. Marin. Thank you. Mr. O'Krieg? Oh, I'm sorry. I'm doing it wrong. Mr. Marin. Good afternoon. May I please record? My name is Daniel Marin. Calica. I represent the respondents in the case below. This involves the probate of the estate of Evangelos Tassaras, and it involves the question of whether we have brought before this court, asking this court to review the decision of Judge Allen in trial court, admitting to will a document that is from 1996, when a will from 1993 had already been admitted to probate, an American will executed in the United States. This 1996 will was admitted to probate in November of last year. This entire matter, there was a probate that was initiated in June of 2006 with the admission of the 1993 American will to probate. Sometime in July of 2007, the petitioners brought a petition to admit a later will to probate, and this later will is this purported Greek will, and through a series of motions to dismiss brought by my clients in trial court, a first amendment petition, a second amendment petition, a third amendment petition, and a fourth amendment petition to admit this Greek will to probate were all filed. And the basis for the admission of the Greek will to probate, as represented to the trial court, was section 7-3B of the Illinois Probate Act. Now section 7-3 of the Probate Act has some specific requirements, and it's our suggestion to this court that the error in the trial court was that the trial court allowed this will to be admitted without adhering to these sections, without adhering to these requirements of section 7-3B. Let me ask you, were those requirements just for authentication of the document? Your Honor, I don't think that they were just for authentication of the document, because what it recites is what needs to be proved to the trial court. It's not just authentication. We have an issue here where we're not even sure what document is before the court. Well, I guess, but isn't it just those requirements that you want to make sure this is an authentic will? I mean, isn't that the... That is one of the elements? Isn't the policy behind those things approved so that you're trying to make sure these are authentic wills? Authentic, in other words, reliable. It is truly before the foreign jurisdictions court. And in this case, the question is, and what seems to be suggested by the petitioners in this appeal, is what it is that has been admitted to probate. We contend that what's been admitted to probate by this Greek will is an oral declaration that was made before the Greek court of first instance in Athens in February of 2007, and not the handwritten will that was read aloud. We know there is a handwritten will because it was attached to the First Amendment petition, but it was not attached to the Second, Third, or Fourth Amendment petitions, and the petitioners seem to have abandoned the need for presenting any evidence that the handwritten will itself continues to be in existence, and also have abandoned the notion that this handwritten will is the will that's in probate right now. So what we're talking about is the authenticity of the document. We are talking about the reliability of what... I guess where I'm going is, doesn't the Hague Convention talk about authenticating foreign documents? It does. And isn't the Hague Convention a treaty? Yes, it is. And don't treaties preempt all state and even other federal laws? Aren't treaties just trump everything below them? I don't think that would go that far, no. In other words, no treaty entered into between countries would bear upon, unless it directly dealt with... This is... The reason there is a probate act at all, that has a section called the Foreign Wills Act, is that certainly the Hague Convention and treaties don't deal with the specifics of what's required in Illinois. And I think this is something the state has a right to require. In other words, if you do adhere to the Hague Convention, and you have fulfilled your obligations, then you... I guess, my question isn't, does the Hague Convention preempt the probate act? It's just that the Hague Convention has provisions about authenticating foreign documents. Right. And would it be fair to say that once a document is authenticated, pursuant to the Hague Convention treaty, that no state court can require additional authentication beyond that which is approved by the Hague Convention? That's true. I would agree with that. But the thing is, what we're suggesting here is that they didn't do that. They didn't even do what's required here in the probate act. You know, section 7S3B talks about a written will from any state or country whose laws do not require a will to be probated will be sufficiently proved to admit it to probate in this state by doing two things. Introducing, in evidence, an authenticated certificate of the legal custodian of the will that the copy is a true copy. Secondly, that legal custodian has to aver that that will has become operative by the laws of the other country, state or country. There is no one here who has been identified to be the legal custodian. We're not saying that authentication is wrong or that they can't do it. We're not saying they can't reach this. But this is the standard. And the standard is, you've got to find out who the legal custodian of the will is. They haven't established who the legal custodian of the will is at all. They couldn't see, they couldn't. Now, I will say that in their brief, they talk about if it's all you, if the respondents insist, the notary herself is the legal custodian and could avert these things, but she doesn't have to, and she already did anyway. Well, do I misunderstand? It seems to me, aren't they saying that the Greek will, under Greek law, is that, is the court record after something is read into. In Greek law, in other words, their wills in Greece don't look like our wills here. Right. I mean, isn't that their argument? Well, I'm not sure what their argument is as far as whether the Greek will is a written document or not. I'm not sure. What I am sure of is that this statute discusses written wills, and it talks about somebody has to be the legal custodian of a document that's going to get admitted here. Well, custodian implies there is a piece of paper. They seem to suggest in their arguments that you can go and order copies of the transcripts, certified copies of the transcripts of the oral publication of this will, but that's not what the Illinois statute calls for. The Illinois statute says find a legal custodian and get from him two things. One, a certificate that, you know, this copy is a true copy, and get that authenticated, and also a statement by that person that the will has become operative in the laws of the other country. It's, in some ways, Your Honor, it's this very simple case. The statute calls for a written will. They don't have a written will that has complied with this at all. This case is over, essentially. Well, but it strikes me just that in Greece it appears that these relegations of wills, it's not a written document that becomes a will. It's that in the notes. So to call for a legal custodian of something when in Greece that's not the way they do it, I mean, we still have to honor Greek law, don't we? You have to recognize that, well, you have to do both. You have to honor Illinois law. And as it, in other words, Illinois law sets, the legislature has set forth what the standard is here. And the first two words of the statute say a written will. And what they're suggesting is that it's not, the will in question here is not written. It is some kind of oral declaration that's commemorated in a transcript someplace. But that Illinois, but even if you, the thing is even if you recognize that what makes it effective over there is the publication of the will by reading it aloud, that doesn't change the fact that there is a written will. They furnished it and attached it to the First Amendment petition. And then they abandoned it. But in response to our brief, they have said that if you want it, you know, if you want us to really go through that, you can, you know, the untranslated Greek handwritten document is in blue ink, and somebody has signed it saying it's a certified copy. But that's not translated. We have no translation of that. And they've abandoned it. It's not part of their petition. Well, one thing is it seems to me, their argument seems to be is that that written document in Greece has no legal effect. It's not, it doesn't have the same legal effect of a will, you know, the written will has here, as that which is in the record. But let me shift gears because I want to ask you a question about something here. I mean, would you, in other words, admitting that will to probate, if it's, assuming we affirm, it's not the end of the discussion, right? You can still attack, you can still attack that will. Once it's admitted to probate, that's not the end of the discussion, right? There is, right. There's the option to contest the will. No question. It's authenticity. You can attack everything about it once it. I don't know if you can attack its authenticity. Once it's been admitted, you can attack whether it's a valid will. But I think this is the place where we discuss the authenticity. And other than that, they've adhered to the requirements of Section 7-3B. And, you know, I know it began with the petitioners calling this a notarial will in the original petition, maybe the first amendment petition. They abandoned that after a while and said this 7-3B is the key. It is a copy. And it's not a notarial will. But the, you know, it's a simple, even if you have, it would be similar to a will that's never been admitted to probate here. It may have some meaning. It may have some significance. You're obligated to file a will that's not admitted to probate whether or not you're going to pursue it. You've got to file it within 30 days. Don't forget to do that. Thank you. Mr. Merritt, I have some questions. Sure. You keep saying that there is no will. It's my understanding that the will in Greece is read, there's a transcript, and that is stamped, and it is certified to be a true and correct copy of what was read into the record. And that transcript becomes the legal document from which the decedent's property is disposed of in Greece. And that, so what you're contesting, you're saying that that is not a will. Well, I'm saying that it's certainly the handwritten document. Without the handwritten document, there's no will at all. The publication of it would be similar to admitting a will here to probate. You know, the court doesn't really allow here to get it admitted to probate, but, you know, the will itself still has provisions. Well, the provisions of that handwritten document seem to me and seem to the respondents to be what's required under this statute. And even though it's been made into an effective, it has been rendered operative by the reading of it aloud, by an order being entered, it's very similar to an Illinois court admitting a will to probate. But that's not what the letter from the Greek authorities seem to say. The Greek authorities' letter seems to say that, no, this is the will. Now that we have read it and it goes in the record and it's transcribed, that this is the legal document from which we operate from. You know what, Your Honor, I think that's what the petitioners are saying. I don't quite read the affidavit to say that. The affidavit recites that the will in question is a public one. If you look at page C408, the first page of the affidavit, it's 2A. Very quickly, the will in question is a public one. It's in 2A. 2C says, as soon as the notary public is informed of the death of the testator, here she sends the public will to the first instance court of the area where the notary public was appointed. And then if you skip to, well, D, the court publishes the will at a hearing, and the entire will is included in its minutes, which are verified. E, the minutes of the hearing, which embodies the public will, is entered in a special will record of the court of first instance, and copies of extracts from this record are available to anyone on request. I don't quite see that as saying that this is the will. It says this makes it into an effective appropriate proceeding. Thank you. Thank you for listening. It's a confusing one. Mr. O'Cree? I spent, truthfully, hours rereading the record of the hearing, and I've got to, for the most part, shut up. Unless we have questions, I have a couple of points to raise, because from your questions, you're hitting the issues already. We know what we're here about, and I'm so sincere about this. Justice Schmidt, the comment that you made about the Hague Convention, exactly. It was October 25th of 1981 that we signed on to the signatory portion of this, and the apostille, as to why we should have it to recognize certified foreign documents in this country. That's what we've done by treaty in the United States. We then have a procedure to follow to see if the court had enough sufficient basis for admitting this will into probate, and when we follow this through and look at the enabling clause of the 28 U.S.C., it incorporates Rule 44 that allows the court here in Illinois to say, do we have enough information now to determine whether or not this was a valid document, this apostille and the attachments, and it's there. The will is not a will in Greece and doesn't become operative until it's published, according to the proceedings in the court of first instance in Piraeus, Greece. That, indeed, is what occurred. We have now an operative will in Greece. Once it's published in court. Before that, it means nothing. Just in case anyone cares, and maybe we don't, but they made a comment about the public will, and we mentioned this. We learned from the attachments there are three types of wills in Greece, and they're pretty interesting because they're different than concepts that we have here. There is no notarial will that we can find a definition of, but there is a public will, a mystic will, and a holographic will. In the attachments to the pleadings that we had, we explained the differences in these wills, and this, indeed, was a public will where a will is actually written out, that's true, with a notary who then brings in the witnesses when they read it, but they're sworn to secrecy. The mystic will is kept secret until after death. No one hears that. And the holographic will is just as we would have a holographic record and will. But the will has no legal effect until it's published in court. And that, in fact, is what occurred here, and that's why we had the apostille and the attachments brought to the court to do this. Mr. Roker? Yes, ma'am. You keep saying the will has no legal effect until this happens. Yes, ma'am. In Greece. In Greece. Justice O'Brien, if I'm understanding her earlier questions, and I are both under the impression that the documents from the hearing in Greece actually become the will. Yes. Is that correct? Ma'am, that is my understanding, Justice McGee. That is my understanding. It means nothing until it's published in court and the court makes the entry. That then becomes the official will in Greece. We could have gone the other route until— I've got to explain something else if I may, Your Honor. Along the same line, counsel mentioned the fourth amended petition. That's all true. But if the court read the record, and I know you did, there's only one ruling on one of those. We asked for more time each time from Mr. Voss and my colleague as we would learn more about Greek law to make certain that no mistake was being made with the process. Can we supplement this? Can we supplement that? That was done by agreement. But for one ruling in the beginning. So these petitions, to admit, we were learning more about the process, too, because, Judge, there is just such a paucity of case law on this. I think the most current one, if I recall, is 1918, which certainly predates our COVID Act of 75, the convention of 81 that we joined, the 61 convention that we joined in 81 regarding the atmosphere. So there's a shortage of laws. We said we better make sure we're getting this right and doing this the right way. And the official document that makes this a will is the hearing in court by Reis-Greis. And that's what we got the transcript of. That's what we did, Judge, to make sure we're doing it the right way. So under Greek law- Yes, ma'am. Judge, we can bet we're two hearing aids, and your voice is soft, and I'm an old, deaf guy. I'm sorry. Under Greek law- Yes, ma'am. The will- Yes, ma'am. Once it's read and the record is made is not the handwritten document. My understanding, Your Honor, is that handwritten document has no legal effect whatsoever. And, indeed, when I walked in here before I walked in the courtroom, I saw the book you have sitting out there, and the upper left-hand date has 1880 in it, the large book. That's how the handwritten documents in Greece get written, in a massive book. In a massive book. And that book, through one of the State Departments in Greece, then gets taken to court, physically taken to court. And that becomes a part of the court process. It is read and then certified in court doing this. And then when the book is all picked up, it might have a thousand pages. Then it's put into registry again with the court somewhere, and a new book is started. A new book is opened up. But the real will, my understanding, is what the court states and reads openly in paria script before the judge and the clerk of the court. It's different than an American concept, Judge. So when your document that consists of the minutes, essentially, of the hearing, where it was read aloud and then reduced to minutes. Yes, ma'am. That is, under Illinois law, what needs to be admitted to probate. That is my understanding, Justice. Yes, ma'am. That is my understanding. That is what becomes the official will. It means nothing until that occurs. And if for some reason, if the court should say for some reason, look, we're going to ignore the hate convention. We're going to ignore Greek recognition of the will of the law. Someone find a notary's book and then have it certified. All right, if that's the case. But it just doesn't make sense. I'm sorry, Your Honor. It just doesn't feel right. Because the real document is a certified proceeding in court. Unless there are questions, I'm going to shut up. Well, let me just ask you, just so we're clear, because there was an argument in the briefs, I think, by Mr. Moran. You'll get a chance to address this. But let me ask you about this motion to admit the will to probate. It should be in the nature of a motion for summary judgment. I mean, this is not a you win situation. It means the will goes into probate. Mr. Moran and his clients can still attack that. Correct. Oh, Your Honor, when you said that, too, I sat down there and I said, Roman, you can shut up again on a different issue. That's absolutely correct. This is just a threshold to bring it into court. Now it can be challenged. This appellate court has written a decision before, for example, that you can have two or more wills at the same time, unless one revokes the other, unless there are inconsistent provisions. But this is just to – that's why it's not a summary proceeding. It's just to get it in probate court. And now, if there wants to be a contest, let's have a contest now. But give us a chance. Please let us express the last wishes of Dr. Tesaris. That's what we're trying to get to. Let that now become the issue. Let his last desire be made of record. So now if you want to challenge it, now let's challenge it. Do you folks have any questions? Your Honor? Justice? Thank you. I'm sorry. I didn't. All right. Mr. Maran, rebuttal. Very briefly. There's no recitation anywhere by anybody on the particular side of this as to who the legal custodian is, whether it's the public oral declaration or it's the handwritten document that preceded it. Nobody has come in and said, I am the legal custodian, and I say this is a true copy of the will. And that's grossly missed. Well, isn't that what – I mean, isn't that relatively plain from the record? That is, in fact, what the court proceeding is about. That this document is actively read into the record, and that's why the court certifies that, yes, this is the public will of whomever, and that that's the point of the court proceeding. Well, I think we're putting the cart before the horse in order to get there, in Illinois anyway. You have to have somebody say, I've adhered to 7-3B. I'm the legal custodian, and this is a true copy. Nobody says that here. Well, and again, I think that as far as authenticating documents, I think that the Hague Convention, I think the treaty law is just to the extent they're inconsistent, I would suggest that the law is pretty clear that a treaty is the supreme law of the land and preempts any state law that might be inconsistent with it, whether we like it or not. I mean, that's the law. Okay. Well, then you would be reading 7-3B without the word authenticated. No, it's authenticated pursuant to the Hague Convention. It may be, but you have to have the rest of it, too. Somebody certifying that I am the legal custodian and I certify that this copy is a true copy and that it's operative. The only person who's saying it's operative in the laws of Greece is Michael Papazisis, Derafian. Derafian is not the legal custodian of the will. He's not. The notary public, isn't that who is the legal custodian of this? I mean, that person is the keeper once it's written? I don't know that because it's never said it anywhere. Even though Mr. Opry has said in his briefs that the notary is that person, that's not supported anywhere. The notary does not say that. Now, if the notary says it in the handwritten will that's not translated into English that's attached to the First Amendment petition, well, I don't know that because I'm not obligated to know Greek and the trial court's not obligated to know Greek. It's their burden to translate. It seems very simple. You get somebody who is the legal custodian of the document, or if you're going to go along and say it's an oral declaration that has been rendered into a written document by a transcript, somebody has to say, I am the legal custodian. On A15, and I guess C231, the notary public, the transcript, this is a leaning photo. Right. Well, you can read that. I was present during the preparation of this rule and that all the requirements, blah, blah, blah, have been met and acknowledged by all of them. It was signed, and the witnesses and me, and this is a true and exact copy on an even date here with me. You know what, Your Honor? It doesn't say it's a true and exact copy of the handwritten document. It says it's a true and exact copy. It seems to me, and again, this again goes back to the whole summary judgment issue, whether we have a genuine issue or disputed fact here. This seems to me to be reciting that this is a true and exact copy of the minutes, of the minutes, not of a handwritten will, because a handwritten will is not even attached. But the quotation marks end after herewith and begin with the recitation. Again, that is a matter of proof. You don't have anything from the notary. There's no affidavit from the notary that says that I am the legal custodian. Nobody, nobody, even the notary. If you scour this record, the notary does not say I am the legal custodian of this document. There is no such thing as we think of Illinois as a legal custodian in this document in Greece. Right. You know, it's interesting because the… I'll stay here for a minute. Okay, thank you. You can still come in with an explanation for why you don't have it. You can still present to the court. Isn't that kind of what they've done? I'm sorry? Isn't that kind of what they've done? No. They have not said… First of all, it seems to me that the way to do it would be to say, okay, we have searched for, tried to find the legal custodian of the will, whether it's a handwritten will, which I insist that it is. I insist that 7S3B requires a handwritten will to be what gets admitted to Brogan over here. But even if you say it's the oral declaration from the transcript, nobody is saying that I searched for the legal custodian, and there is no legal custodian, and therefore we're doing the next best thing, which is to use this person who was not present at the proceeding, Mr. Papazisis, and he's here to interpret Greek law for us. But they don't say that. And actually, if you look at Rule 44, a whole issue of authentication, Rule 44 has a provision for if you cannot find the original that you're seeking to have authenticated, then you can make a recital.  I have one more question. Sure. How would you characterize the proceeding that took place in Greece? We're looking at 7S3B. Why is this not under 7S3A? Why is our proceeding not under? Why is the operative section of the Probate Act not 7S3A? Well, I think partly because the petitioners are saying that it wasn't admitted to probate over there because they don't have a concept of probate, or this type of will didn't get admitted to probate. It became effective or operative over there. But for practical purposes, is the procedure that took place in Greece not fairly tantamount to a probate proceeding? It certainly appears to be the equivalent. I'm not a Greek law expert, but it seems to be what happens after somebody's gone and there is a will. It seems to follow what happens over there. But in this case, we were responding. The petitioners brought it under 7S3B, and the trial court's ruling specifically explicitly recites that its ruling is under 7S3B. Maybe because it wasn't admitted to probate. The 7S3B talks about a will from a state or country whose laws do not require a will to be probated. I guess you're probably asking the wrong person. As far as that goes. Once again, thank you very much. We thank both of you for your arguments this afternoon. The panel will take the matter under advisement and will issue a written decision as quickly as possible.